JEREMY A. KNAPP, a Minor, by his Mother and Next Friend, Sharon Rangos, *et al.*, Plaintiffs-Appellants, v. THE CITY OF DECATUR *et al.*, Defendants-Appellees.

Fourth District   No. 4—87—0078

Opinion filed September 3, 1987.

Stephen O. Willoughby, of Willoughby & Latshaw, P.C., of Decatur, for appellants.

Jerald E. Jackson and Martin D. Hoke, both of Samuels, Miller, Schroeder, Jackson & Sly, of Decatur, for appellee City of Decatur.

500

Heckenkamp, Simhauser & Drake, P.C., of Springfield (W. J. Simhauser, of counsel), for appellee Otto Baum & Sons, Inc.

Quinn, Johnston, Henderson & Pretorius, Chartered, of Peoria (Murvel Pretorius, Jr., and Kevin M. Miller, of counsel), for appellee Goodmar, Inc.

JUSTICE McCULLOUGH delivered the opinion of the court:

Jeremy Knapp (Jeremy) sustained injuries when he fell from a sandpile at a construction site in Decatur, Illinois, May 1, 1984. His mother, Sharon Rangos (Rangos), brought this action against the city of Decatur (city), Goodmar, Inc. (Goodmar), and Otto Baum & Sons, Inc. (Baum). The circuit court of Macon County orally granted defendants' motions to dismiss plaintiffs' amended complaint for failure to state a cause of action on November 7, 1986. Plaintiffs appealed. We are asked to decide issues relating to jurisdiction and whether the trial court's dismissal was error.

On May 1, 1984, at or about 7 p.m., Jeremy, then six years of age, was injured while playing on a four-foot high pile of sand at a construction site located near the intersection of Wood and Taylor streets in Decatur. Rangos filed a six-count complaint February 28, 1986, in Macon County circuit court, alleging one count of negligence each against the city, Goodmar, and Baum. Three additional counts alleged Rangos' expenses pursuant to the family expense statute. Ill. Rev. Stat. 1983, ch. 40, par. 1015.

Plaintiffs' complaint alleged as follows: the city allowed the sandpile to be placed on or adjacent to its property at the intersection of Wood and Taylor streets in Decatur within 100 feet of an elementary school; the city had a duty of reasonable care in the maintenance and condition of its property and to protect the general public, including children, from injury; the sandpile was placed adjacent to and above concrete curbing and a hard brick road surface, creating an unreasonably dangerous condition for children; the city knew or should have known that children played on the sandpile; the city had actual and constructive notice of the unreasonably dangerous condition to correct it. As a direct and proximate result of the acts of negligence, Jeremy sustained injuries when he fell to the curb and road surface while playing with other children on the sandpile. Counts III and V, directed to the construction firms Goodmar and Baum, respectively, were essentially the same as count I.

The city and Goodmar filed motions to dismiss the counts against them. Both motions claimed plaintiffs failed to establish a legal duty, stating that from the face of the complaint, the sandpile and surround-

ing features were not unreasonably dangerous, but obvious.

The circuit court allowed the motions to dismiss on May 19, 1986. The court's docket entry states: "Arguments heard. Authority reviewed. Defendant's [sic] motion to dismiss allowed. Plaintiff's [sic] complaint dismissed with leave granted to file first amended complaint on or before 21 days. Clerk of the Court directed to forward copy of docket entry to counsel." However, the amended complaint was not filed until November 6, 1986, leave having been granted by the court on that date.

The complaint's allegation that the sandpile created an unreasonably dangerous condition was changed in the amended complaint to state that the sandpile, when placed adjacent to and above the curb and road surface "was open to traffic and was over four feet from top to hard brick surface." Plaintiffs added a new paragraph alleging that the sandpile "had been recently deposited in the aforesaid location and therefore was unstable, loose and sloped toward said brick road surface." The amended complaint was in all other aspects identical to the original.

Motions to dismiss filed by defendants claimed the amended complaint failed to allege a duty. The motions to dismiss were granted November 7. The docket entry reads: "Arguments having been heard on Motions to Dismiss, finding plaintiff has failed to state a cause of action. Plaintiff's complaint dismissed. Cause ordered stricken."

On December 2, 1986, plaintiffs filed a "Motion for Findings." Plaintiffs requested the court to indicate (1) whether the plaintiffs' motion for leave to file an amended complaint was granted; (2) whether plaintiffs' first-amended complaint was filed; (3) whether the complaint or amended complaint was dismissed; and (4) whether the cause was dismissed with or without prejudice.

A hearing on the motion was held January 15, 1987. The court's docket entry for that date shows: "Parties present by counsel. Cause called for hearing on motion for findings. Arguments heard. Finding leave was granted to file amended complaint and that arguments heard were addressed to that amended complaint. Finding the cause was dismissed with prejudice."

Plaintiffs filed their notice of appeal February 2, 1987. Appeal was taken "from that portion of the court's order granting the Defendant's [sic] Motion to Dismiss Plaintiffs' First Amended Complaint with prejudice."

■ Our initial inquiry concerns whether we have jurisdiction to hear this appeal. Plaintiffs contend the motion for findings constituted a post-judgment motion requesting modification of the November 7,

1986, order. Defendants maintain the motion was not a proper post-judgment motion, thus rendering this appeal untimely. This case again illustrates the difficulties encountered by counsel when the ruling below fails to clearly state the basis for judgment. *Sizer v. Lotus Grain & Coal Co.* (1979), 70 Ill. App. 3d 739, 388 N.E.2d 1274.

Section 2—1203 of the Code of Civil Procedure (Code) (Ill. Rev. Stat. 1985, ch. 110, par. 2—1203) provides that within 30 days after the entry of judgment any party may file a "motion for a rehearing, or a retrial, or modification of the judgment or to vacate the judgment or for other relief." Supreme Court Rule 303(a)(1) (107 Ill. 2d R. 303(a)(1)) specifies that in cases where a timely post-trial motion "directed against the judgment" is filed, the notice of appeal must be filed within 30 days after the entry of the order disposing of the last pending post-trial motion. The supreme court has held that the motion must request one or more of the kinds of relief authorized by section 2—1203 (former section 68.3) of the Code. *Fultz v. Haugan* (1971), 49 Ill. 2d 131, 135, 305 N.E.2d 873, 876.

Defendants rely on *Lewis v. Loyola University* (1986), 149 Ill. App. 3d 88, 500 N.E.2d 47, to support their position that the motion for findings was not directed against the judgment. In *Lewis*, defendant appealed judgments in plaintiff's favor. Plaintiff then filed a motion for findings of fact and conclusions of law which stated: " 'Plaintiff accepts the judgment of [the circuit court] and is willing to abide by the terms and conditions of the judgment order.' " (149 Ill. App. 3d 88, 92, 500 N.E.2d 47, 49.) On appeal, plaintiff argued the appellate court lacked jurisdiction because the defendant's notices of appeal were filed prior to the disposition of the plaintiff's post-trial motion. The reviewing court concluded the motion was not directed against the judgment and was not a post-trial motion. The appeal was properly before the court.

Defendants cite *Sizer v. Lotus Grain & Coal Co.* (1979), 70 Ill. App. 3d 739, 388 N.E.2d 1274, in which this court ruled the filing of defendant's "Motion to Expand Order" after the denial of its post-trial motion did not extend the time for filing notice of appeal. The motion was seen not as an attack on the judgment but as a request for reasons for the trial court's decision denying the initial post-trial motion. The panel acknowledged the arcane docket entry which the motion sought to clarify, but ruled the filing of the motion did not extend the time in which to appeal. This court recognized the plight of counsel faced with a brief, unenlightening docket entry and the dilemma of whether to appeal "without a scintilla of guidance as to the basis or reasons for the trial court's ruling." 70 Ill. App. 3d 739, 742, 388 N.E.2d 1274,

1276.

Here, the motion for findings did not expressly accept the court's judgment as in *Lewis*. *Sizer* is distinguishable as well. In that case, the court had already ruled on defendant's first post-trial motion. Here, no prior post-trial motion was filed or ruled upon. The motion requested certain specific findings not stated by the court in the November 7 ruling, for which no written order was filed or requested.

The motion in the case at bar is unlike the motion to amend the complaint rejected in *Fultz v. Haugan* (1971), 49 Ill. 2d 131, 305 N.E.2d 873 (held not directed against the judgment), or the motion to amend the pleading after judgment disallowed in *People ex rel. Endicott v. Huddleston* (1975), 34 Ill. App. 3d 799, 340 N.E.2d 662 (ruled improper under *Fultz* rationale). The motion for findings was sufficiently directed against the November 7, 1986, judgment to constitute a post-trial motion under section 2—1203. This appeal is therefore timely, having been filed within 30 days of the entry of the order disposing of the motion.

In reaching our conclusion, we note the motion for findings comes within the "other relief" specified in section 2—1203. While the motion may not have requested an outright modification of the order, it asked for similar relief. The motion for findings requests, in effect, a change in the form of the original judgment to reflect the actual action taken.

■ Next we address plaintiffs' argument the trial court erred in dismissing the complaint as sufficient facts were alleged to show duty. Defendants contend the amended complaint alleged an obvious risk for which no duty can be imposed.

Allegations of complaint are taken as true for purposes of a motion to dismiss. (*Vaughn v. General Motors Corp.* (1984), 102 Ill. 2d 431, 466 N.E.2d 195.) Dismissal with prejudice should not be made unless it clearly appears that no set of facts could be established which would entitle plaintiffs to relief. *Fechtner v. Lake County Savings & Loan Association* (1977), 66 Ill. 2d 128, 361 N.E.2d 575; *Edgar County Bank & Trust Co. v. Paris Hospital, Inc.* (1974), 57 Ill. 2d 298, 305, 312 N.E.2d 259, 262.

■ The principles employed in analyzing this question were set forth in *Kahn v. James Burton Co.* (1955), 5 Ill. 2d 614, 126 N.E.2d 836. The minor sustained injuries on a construction site when a pile of lumber on which he had been playing tumbled and boards fell on him. The supreme court, in upholding the jury verdict in plaintiff's favor, rejected the attractive nuisance doctrine and held the rules of ordinary negligence cases applied to cases involving personal injuries to children. It established the test of liability as foreseeability of harm to the

child. 5 Ill. 2d 614, 624-25, 126 N.E.2d 836, 841-42.

The court reiterated the *Kahn* rule in *Corcoran v. Village of Liber-tyville* (1978), 73 Ill. 2d 316, 383 N.E.2d 177. It affirmed the appellate court's reversal of a jury verdict in favor of the mother of a child who fell into a ditch and suffered brain damage. The court stated that a duty which would not be imposed under ordinary negligence principles would be found where an owner and party in possession or control of premises "knows or should know that children frequent the premises and if the cause of the child's injury was a dangerous condition on the premises." (73 Ill. 2d 316, 326, 383 N.E.2d 177, 180.) The court defined a dangerous condition as one which is likely to cause injury to children generally who, by either their age or maturity, would not be expected to comprehend and avoid the risks. The burden is on the plaintiff to allege sufficient facts to describe the condition so the court may conclude the condition exposed children to risks greater than those normally encountered. It cautioned that the principles articulated in *Kahn* should not be used to impose a duty to remedy obvious conditions, which children are generally expected to appreciate and avoid. 73 Ill. 2d 316, 326, 383 N.E.2d 177, 180.

The same result was reached in *Cope v. Doe* (1984), 102 Ill. 2d 278, 464 N.E.2d 1023. A seven-year-old boy drowned in a retention pond at an apartment complex. The court concluded no duty existed because the dangers presented by the body of water were obvious, and affirmed the appellate court's reversal of the jury verdict for the plaintiff.

This court set forth a similar analytical framework in *Niemann v. Vermilion County Housing Authority* (1981), 101 Ill. App. 3d 735, 428 N.E.2d 706, in which we applied a four-pronged test: (1) the owner knows young children frequent the area; (2) there is a dangerous or defective condition present on the land; (3) the condition or agency is likely to cause injury because of a child's immaturity or inability to appreciate the risk; and (4) the expense of remedying the condition or guarding against injury is slight compared to the risk of harm to children. We required the plaintiff to allege facts that describe, or from which can be inferred, a condition that exposes children to an extraordinary risk of harm. Defendants concede the first element is met by the allegation that the sandpile was within 100 feet of an elementary school.

Turning to the second prong, it is well settled that sand is not dangerous. (*Halloran v. Belt Ry. Co.* (1960), 25 Ill. App. 2d 114, 120, 166 N.E.2d 98, 101.) Plaintiffs attempt to show the facts in this case warrant application of exceptions set forth in *Landman v. M. Susan &*

*Associates, Inc.* (1965), 63 Ill. App. 2d 292, 297, 211 N.E.2d 407, 410. In that case the court stated the attractiveness of sand alone was not enough to impose liability. There must be another factor, such as piling or location, which would make it likely that injury would result to those attracted to it.

Plaintiffs allege the instability or shifting of the sand caused Jeremy's fall. This is distinguishable from *Kahn* inasmuch as piled lumber is substantially different in form and behavior than piled sand. Sand is normally loose and tends to shift. Plaintiffs do not explain why the loose piling and shifting propensity of sand is an extraordinary risk to which Jeremy was exposed.

Plaintiffs further assert the location of the sandpile above, adjacent to a curb and brick road surface, presents a dangerous condition. Defendants maintain the location near a street does not convert a sandpile into a dangerous condition under the *Corcoran* definition.

This case is unlike *Halloran v. Belt Ry. Co.* (1960), 25 Ill. App. 2d 114, 166 N.E.2d 98. A 13-year-old boy slipped and fell under a moving train 30 feet away from the sandpile on which he and his companions had been playing. The location of the sandpile was seen as a crucial question in determining liability. Whether the location of a sandpile near several railroad tracks created a danger, and whether the defendant should have anticipated it, was deemed to be a jury question. In the case at bar, the location of the sandpile at an intersection is alleged to create a dangerous condition.

Under the facts of this case, neither the location nor the condition of the sandpile is likely to cause injury because of the child's immaturity or inability to appreciate the risk. The amended complaint alleges Jeremy sustained injury when he fell from the sandpile. Falling is routinely regarded as an obvious risk capable of appreciation by even very young children. (Restatement (Second) of Torts sec. 339, comment *j*, at 203 (1965).) We do not believe a six-year-old child cannot appreciate the risks presented by a four-foot high sandpile. We question defendants' suggestion during oral argument that a sandpile next to a street is not of some significance. However, the location here was a risk not beyond the appreciation of a six-year-old.

The allegations of the amended complaint fail to allege a duty, and, therefore, do not state a cause of action. The order of the circuit court of Macon County is affirmed.

Affirmed.

GREEN and KNECHT, JJ., concur.